```
                   UNITED STATES BANKRUPTCY COURT
                  FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                          )
                                )      Chapter 13
RANDALL D. ALDRICH and          )
WENDY M. ALDRICH,               )
                                )      Bankruptcy No. 08-00520
     Debtors.                   )
_____

IN RE:                          )
                                )      Chapter 13
KELLY G. VOTROUBEK and          )
MISTY L. VOTROUBEK,             )
                                )      Bankruptcy No. 08-00743
     Debtors.                   )
```

**ORDER RE: OBJECTIONS TO CONFIRMATION OF PLANS**

These cases jointly came before the undersigned on July 8, 2008 for hearing on Objections to Confirmation of the Chapter 13 Plans.  Debtors were represented by attorney Janet Hong. Objector Wells Fargo Bank, N.A. ("the Bank") was represented by attorney Mark Walz.  After oral argument, the Court took the matter under advisement.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

**STATEMENT OF THE CASE**

The Bank objects to confirmation of Debtors' plans.  It argues that plan provisions governing its postpetition charges and fees improperly modify its rights as the holder of a security interest in Debtors' residence.  Debtors assert the plan provisions are necessary to monitor and regulate the charges imposed by the Bank after confirmation.

**FINDINGS OF FACT**

Both of these Chapter 13 cases include identical plan language and identical objections by Wells Fargo Bank regarding Section 13 of the plans.  At the time of hearing, the issues were narrowed to some extent.  Debtors will amend the plans to include a lead-in paragraph at the beginning of Section 13(B).  They will also amend Section 13(B)(7) to clarify that it only applies to Bank charges arising while the Chapter 13 case is being administered.

The Bank's objections are limited to paragraphs 13(B)(7), 13(B)(8)(C), and 13(B)(9). As the Bank stated it has no objections to paragraphs 1 through 6 of Section 13(B), those sections will not be addressed in this ruling. At the hearing, counsel for the Bank stated that a compromise could be achieved by offering to provide Debtors notice of postconfirmation charges which arise while the case is pending. The Bank would agree to comply with Debtors' requests for information and to send monthly statements to Debtors if Debtors agree that these contacts are not violations of the § 362(a) automatic stay.

From the objections and briefs filed, it initially appeared that the Bank only objected to the plans' treatment of attorney fees. Counsel for Debtors clarified that the portion of Section 13 to which the Bank objects applies not only to attorney fees, but also to all other charges or fees the Bank may impose on Debtors' mortgage account. Counsel for the Bank responded that the Bank objects to the extent that the plans attempt to modify its rights to any charges or fees.

Paragraph (7) of Section 13(B) of the plans in essence requires that the Bank receive Court approval under Rule 2016(a), after notice and hearing, for any charges added to Debtors' mortgage account. Paragraph 8(B) requires Trustee to notify the parties when the mortgage lender's prepetition claim for arrearages is paid in full and requires the lender to file a Statement of Outstanding Obligations itemizing postpetition obligations. Paragraph 8(C) requires the lender to use the Paragraph 8(B) procedure to collect postpetition costs of collection, including attorneys' fees. Paragraph 9 states that a violation of Section 13 will be deemed a willful violation of 11 U.S.C. § 524(I). A verbatim copy of Section 13 of the Plans is attached to this order as Exhibit 1.

Debtors assert the plan language is designed to monitor and regulate the Bank's treatment of plan payments and assessment of postconfirmation charges to Debtors' mortgage account. They argue they must have notice of charges assessed by the Bank during the plan to successfully cure arrearages without falling behind. Debtors also note that the Bankruptcy Code requires that Trustee receive notice of new charges which the Bank adds to secured debt while the Chapter 13 case is pending.

Debtors' plans require that additional charges imposed by the Bank postconfirmation be reviewed by the Court for reasonableness. Debtors assert that abusive and unjustified fees would violate § 524(I). They deny that any of the provisions in Section 13 of their plans violate the Bank's contract rights.

Rather, Debtors argue, the language merely defines the procedures the Bank must follow to exercise those rights. Debtors assert the Section 13 language is necessary to protect them from mortgage servicing abuses. Trustee filed a report of no objection to confirmation and concurs with Debtors' position.

The Bank objects that the plans seek to improperly modify its rights. As interpreted by the Bank, Section 13(B)(7) bars it from assessing charges without receiving Court approval. Section 13(B)(8)(B) sets out procedures for assessing or seeking reimbursement of postconfirmation fees and charges. Section 13(B)(9) gives Debtors a cause of action under § 524(I). The Bank asserts these are all improper modifications of its mortgage or otherwise violate the Bankruptcy Code.

## CONCLUSIONS OF LAW

A chapter 13 plan cannot "modify" the rights of the holder of a security interest in a debtor's primary residence. 11 U.S.C. § 1322(b)(2). Generally, such rights arise from mortgage instruments which are enforceable under state law. In re Watson, 384 B.R. 697, 704 (Bankr. D. Del. 2008). Bankruptcy Courts have jurisdiction and authority to hear and decide post-petition claims and charges arising under mortgage documents. Id. at 702; In re Sanchez, 372 B.R. 289, 306 (Bankr. S.D. Tex. 2007); In re Lichty, 251 B.R. 76, 78 (Bankr. D. Nebr. 2000) (applying Nebraska law in determining allowance of postconfirmation attorney fees).

Debtors draw many of the provisions in Section 13 of their plans from In re Collins, 2007 WL 2116416, at *2-3, *17-18 (Bankr. E.D. Tenn. July 19, 2007). The court in Collins held, in part, that "language in a Chapter 13 plan burdening mortgagees with procedural obligations over the life of the plan does not, per se, violate § 1322(b)(2)'s anti-modification provision and is permissible and even desirable." Id. at *11. Other courts have likewise concluded that Chapter 13 plans containing procedures providing for notice of postconfirmation fees and charges, specific allocation of payments, and adjudication by the Bankruptcy Court of disputes over fees, costs and charges under a mortgage do not run afoul of § 1322(b)(2). Watson, 384 B.R. at 705; see also In re Anderson, 382 B.R. 496, 504 (Bankr. D. Or. 2008) (construing General Orders imposing standard procedures for Chapter 13 plans); In re Wilson, 321 B.R. 222, 223 (Bankr. N.D. Ill. 2005) (considering model Chapter 13 plan adopted by court); but see In re Maxwell, 343 B.R. 278, 279 (Bankr. M.D. Fla. 2005) (finding language in Chapter 13 plan unilaterally prohibiting postconfirmation charges and fees not permissible); In re Araujo,

3

277 B.R. 166, 167 (Bankr. D.R.I. 2002) (disapproving plan language giving the Bankruptcy Court exclusive jurisdiction over postconfirmation charges).

The requirement of an application for compensation or reimbursement pursuant to Rule 2016(a) does not apply to a mortgage lender's contractual fees and charges arising after confirmation. In re Padilla, 389 B.R. 409, 443 (Bankr. E.D. Pa. 2008). The case on which Debtors' plan language is based, Collins, 2007 WL 2116416, at *16, similarly rejects the use of Rule 2016(a) as a basis for requiring an application for charges and fees. It further rejects language deeming the lender in violation of § 524(I) if it fails to follow the procedures required by the Chapter 13 plan. Id.

Courts utilize various procedures to oversee administration of Chapter 13 plans. For example, cases such as Wilson, 321 B.R. at 223, and Anderson, 382 B.R. at 504, construe those jurisdictions' model plan or General Order setting out appropriate procedures. In Watson, 384 B.R. at 710, the court adopted procedures proposed by Wells Fargo Home Mortgage in In re Jones, 2007 WL 2480494 (Bankr. E.D. La. Aug. 29, 2007). Those procedures were proposed in response to the imposition of damages against Wells Fargo for violations of the automatic stay in In re Jones, 366 B.R. 584, 604 (Bankr. E.D. La. 2007).[1]

**ANALYSIS**

The Bank argues it could resolve many of the issues raised by Debtors by agreeing to give Debtors notice through monthly statements and/or in response to Debtors' requests for information. Debtors assert that both notice of postconfirmation charges and this Court's ability to review such charges for reasonableness are important to guarantee them the fresh start to which they are entitled. The Bank objects to being forced to apply to the Court before assessing contract fees and charges, in the absence of any actual dispute between the parties.

Recent litigation relating to abuses identified as occurring in the mortgage servicing industry provides the motivation for Debtors' proposed plan language. Debtors' brief alleges that

---

[1]The viability of the procedures proposed by Wells Fargo in Jones, and further adopted by Watson, is questionable in light of the determination in Wells Fargo Bank, N.A. v. Jones, ___ B.R. ___, 2008 WL 2635369, at *25 (E.D. La. July 1, 2008), that Wells Fargo's "consent" to the new procedures had been revoked.

mortgage lenders routinely refuse to communicate with Chapter 13 debtors and then assess "junk" fees against mortgages while the case is pending without informing debtors or trustees.  They cite Porter, Katherine M., <u>Misbehavior and Mistake in Bankruptcy Mortgage Claims</u>, University of Iowa Legal Studies Research Paper No. 07-29, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1027961, which examines the behavior of mortgage companies in 1700 recent Chapter 13 cases.  <u>See also</u> Rao, John, <u>Fresh Look at Curing Mortgage Defaults in Ch. 13</u>, 27 Am. Bankr. Inst. J. 14 (Feb. 2008) (hereafter "<u>Fresh Look</u>") (noting that mortgage creditors struggle with correct application of payments in Ch. 13 cases).  The Bank here appears to be the same entity as the one sanctioned in <u>Jones</u>, 366 B.R. at 600, for violations of the automatic stay in regard to postconfirmation fees and charges and improper application of payments.[2]

The provisions in Section 13(b)(7) of Debtors' plans requiring the Bank to make a Rule 2016(a) application before assessing postconfirmation fees or charges are not confirmable.  Rule 2016(a) does not apply to these types of charges.  Likewise, the provisions in Section 13(b)(9) giving Debtors a cause of action under § 524(I) for the Bank's violation of Section 13 of the plans are improper.  Section 524(I) applies to postdischarge activities by lenders.  Thus, paragraphs (7) and (9) of Section 13(b) constitute improper plan provisions.

The Bank's remaining objections relate to Debtors' request that this Court review the Bank's fees and charges for reasonableness.  The Court has the jurisdiction and authority to determine the reasonableness of the Bank's postconfirmation fees and charges.  However, such a review is appropriate only after an actual controversy exists.  Debtors seek Court oversight even absent a controversy.  Interim oversight is more appropriately the function of the Chapter 13 Trustee.  Court oversight is not required under the Code and is unnecessary when a determination can be made after controversy arises.  If a dispute arises after Debtors receive notice of postconfirmation charges, they may file a motion seeking Court review of the disputed charges.

The plans, as presently constructed, are not confirmable.  Debtors' plans seek to prevent abuses which have occurred in the mortgage lending industry.  While there are no allegations that

---

[2]The lender in <u>Jones</u> is identified in subsequent litigation as "Wells Fargo Bank, N.A. f/k/a Wells Fargo Home Mortgage, Inc." <u>Wells Fargo Bank, N.A. v. Jones</u>, 2008 WL 2635369, at *1 (E.D. La. July 1, 2008).

5

any inappropriate conduct has occurred in the present cases, there is some reasonable basis for concern based upon recent litigation.  However, controls inserted into a plan to prevent abuse must be authorized by the Bankruptcy Code and Rules. Chapter 13 plan provisions are limited by the § 1322(b)(2) requirement that mortgage contracts cannot be modified.  Plan provisions which attempt to modify the underlying contract agreement are inappropriate.  Confirming such plans would constitute a revision of bankruptcy law, which is the prerogative of Congress and not the courts.

     Having determined that the plans as presented are not confirmable, the Court's function is completed.  While it is the duty of Debtors to propose confirmable plans, the Court concludes it is appropriate to provide some guidance as to what might appropriately be included in a confirmable Chapter 13 plan. After surveying relevant cases, model plans, standing orders and commentary, the following provisions appear to address Debtors' concerns and would be presumptively acceptable to this Court in future Chapter 13 plans.  These provisions are intended to guide Chapter 13 Debtors in their treatment of postconfirmation charges and fees imposed by secured creditors.  While obviously not mandatory, they are suggestions intended to help avoid a long process of guesswork by Debtors.

     These recommended Chapter 13 plan provisions governing creditors holding claims secured by a mortgage on real property of the debtor are as follows:

     (a)  A creditor may send such billing statements, coupons and statements regarding postpetition payments, fees, expenses or charges on the loan directly to the debtor as it customarily sends when no bankruptcy case has been filed.  The creditor shall not be found to have violated the automatic stay by doing so, provided the communication indicates it is for information purposes and is not a demand for payment.[3]

     (b)  Annually, beginning one year after entry of the initial plan confirmation order, the creditor shall submit to Trustee, the debtors and debtors' attorney a 12-month summary of the activity on the loan, including an itemization of all payments, fees, expenses or charges on the account.  The creditor's failure to give such notice shall be deemed a waiver for all purposes of

---

[3] See Anderson, 382 B.R. at 509; Bankr. D. Kan. Standing Order 07-4, ¶¶ (b)(2), (c)(2).

6

any claim for fees, expenses or charges accrued during that year.[4]

(c)  No later than 90 days before debtors are scheduled to make the final plan payment, the creditor shall file an initial or amended proof of claim which clearly identifies and itemizes the fees, charges and expenses which accrued postpetition and remain owing.[5]

The Court believes the foregoing provisions address Debtors' concerns regarding the need for notice of the Bank's postconfirmation charges.  After the Bank provides the foregoing disclosures, Debtors may seek Court review of the Bank's charges in accordance with the parties' contract and applicable law. Additionally, if valid fees are charged, Debtors should be able to satisfy them through the Chapter 13 process before discharge, rather than being surprised by additional debt after their plan is completed.

As Debtors' plans are not confirmable as proposed, the Court will give Debtors time to amend their plans.

**WHEREFORE**, the Objections to Confirmation of Modified Chapter 13 Plan filed by Wells Fargo Bank, N.A. are SUSTAINED.

**FURTHER**, confirmation of Debtors' plans is DENIED.

**FURTHER,** Debtors are granted until September 22, 2008 to file amended Chapter 13 plans.

**FURTHER**, if Debtors fail to timely file amended plans, these cases shall be dismissed without further notice or hearing.

DATED AND ENTERED: September 4, 2008

*[signature]*

PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE

---

[4] See Bankr. D. Kan. Standing Order 08-1, ¶ VI.E; Fresh Look, 27 Am. Bankr. Inst. J. at 63.

[5] See Bankr. D. Or. R. 2016-1(i)(2)(A)(iv).

**Exhibit 1**

13. Other Provisions:
A) Debtor(s) agree(s) to submit disposable income in the the Plan for the benefit of creditors.
B) (1) To apply the payments received from the trustee on the prepetition arrearages, if any, only to such arrearages. For purposes of this plan, the "prepetition" arrears shall include all sums included in the "allowed" proof of claim and shall have a "0" balance upon entry of the Discharge Order in this case.
(2) To deem the prepetition arrearages as contractually current upon confirmation of the plan, thereby precluding the imposition of late payment charges or other defaulted-related fees and services based solely on the prepetition default or defaults.
(3) To apply the direct post-petition monthly mortgage payments paid by the trustee or by the Debtors to the month in which each payment was designated to be made under the plan or directly by the Debtors, whether or not such payments are immediately applied by the creditor to the outstanding loan balance or are placed into some type of suspense, forbearance or similar account.
(4) To notify the trustee, the Debtors, and the attorney for the Debtors in writing of any changes in the interest rate for any non-fixed rate or any adjustable rate mortgages and the effective date of any such adjustment or adjustments not less than 60 days in advance of such change or at such time as the change becomes known to the holder if the change is to be implemented in less than 60 days.
(5) To notify the trustee, the Debtors, and the attorney for the Debtors in writing of any change in the property taxes and/or the property insurance premiums that would either increase or reduce the escrow portion, if any, of the monthly mortgage payments and the effective date of any such adjustment or adjustments not less than 60 days in advance of such change or at such time as the change becomes known to the holder if the change is to be implemented in less than 60 days.
(6) To refrain from directly paying or attempting to pay any prepetition tax obligation that the debtor(s) have included in their plan to be paid under their plan unless a motion is filed to modify the plan with adequate notice and hearing or unless a notice of assignment of the tax claim is filed from the taxing authority to the service and/or the holder of the mortgage loan or loans.
(7) To refrain from ever assessing, charging, imposing, advancing or billing any legal fees to the mortgage loan of the debtor(s) at any time including post-petition and pre-confirmation, post-confirmation and pre-discharge and/or postdischarge unless these legal fees have been approved by the Bankruptcy Court upon filing of a proper application for the approval of such fees and charges in accordance with Rule 2016(a) of the Rules of Bankruptcy Procedure and after adequate notice of hearing. To the extent such fees are not approved, but are provided in any type of notice to the debtor(s), such action shall be deemed to constitute a material violation of this provision and a violation of either the automatic stay or the discharge injunction, whichever may be applicable.
(8) MODIFICATIONS. The holders of claims secured by a mortgage on real property of the debtor, proposed to be cured in paragraph 5 of this plan shall adhere to and shall be governed by the following:
(A) Prepetition defaults. If the debtor pays the cure amount specified in paragraph 5, or in such lesser amount as may be established by the creditor's proof of claim, while timely making all required post-petition payments, the mortgage will be reinstated according to its original terms, extinguishing any right of the holder to recover any amount alleged to have arisen prior to the filing of the petition.
(B) Post-petition defaults. Within 30 days of issuing the final payment of the cure amount specified in paragraph 5, the Trustee shall serve upon the holder, the debtor, and the debtor's attorney a notice stating that (1) the cure amount has been paid, satisfying all prepetition arrearage obligations of the debtor; (2) the holder is required to treat the mortgage as reinstated and fully current unless the debtor has failed to make timely payments of post-petition obligations; (3) if the debtor has failed to make timely payments of any post-petition obligations, within 60 days after the Trustee's notice, the holder is required to file a Statement of Outstanding Obligations, consisting of an itemization of all outstanding payment obligations as of the date of its statement, with service upon the Trustee, the debtor, and the debtor's attorney; (4) if the holder fails to file and serve a Statement of Outstanding Obligations within the required time, the holder is required to treat the mortgage as reinstated according to its original terms and fully current as of the date of the Trustee's notice; and (5) if the holder does serve a Statement of Outstanding Obligations within the required time, the debtor may (i) within 30 days of service of the Statement, challenge the accuracy thereof by motion filed with the court, to be served upon the holder and the Trustee, or (ii) propose a modified plan to provide for payment of additional amounts that the debtor acknowledges or the court determines are due. To the extent that amounts set forth on a timely filed Statement of Outstanding Obligations are not determined by the court to be invalid or are not paid by the debtor through a modified plan, the right of the holder to collect these amounts will be unaffected. No liability shall result from any nonwillfull failure of the Trustee to serve the notice required by this subparagraph.
(C) Costs of collection. Costs of collection, including attorneys' fees, incurred by the holder after the filing of this bankruptcy case shall be claimed pursuant to paragraph 13(b)(8)(B) above.
(9) Any violation of this provision shall be deemed a willful violation of 11 U.S.C. Section 524(i) in the event that the mortgage loan is not serviced in strict complaint with this provision of the plan and to the extent the improper servicing results in improper fees and charges of more than $50.00.